```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/07/2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RIGROUP LLC et al.,                                   :
                                                      :
                           Plaintiffs,                :
                                                      :        12 Civ. 3721 (JMF)
              -v-                                     :
                                                      :        OPINION AND ORDER
TREFONISCO MANAGEMENT LIMITED et al.,                 :
                                                      :
                           Defendants.                :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiffs Janna Bullock, a Russian national now living in New York, and RIGroup LLC ("RIGroup USA") bring this action for misappropriation and conversion, fraud, conspiracy to defraud, and breach of fiduciary duty, against Defendants, a group of Russian and Cypriot nationals and entities. At bottom, Plaintiffs allege that Defendants, virtually all of whom are Russian citizens living in Russia, conspired to loot a Russian corporation owned and controlled by Plaintiffs. Three Defendants — Alexander Esin, Vitaly Sirotkin, and Gorsoan Limited — now move to dismiss the complaint on the grounds of *forum non conveniens*, asserting that Russia is a more appropriate forum for litigation of Plaintiffs' claims. (Docket Nos. 22, 47). For the reasons discussed below, Defendants' motions are granted and the Complaint is dismissed.

## BACKGROUND

On a motion to dismiss for *forum non conveniens* that is decided without a factual hearing, a court must accept the facts alleged in the complaint as true. *See, e.g.*, *Aguas Lenders Recovery Grp. LLC v. Suez, S.A.*, 585 F.3d 696, 697 (2d Cir. 2009). The court may, however, consider certain evidence outside the pleadings, including affidavits. *See id.* at 697-98 n.1.

Accordingly, the following facts are drawn from the Complaint and assumed to be true or, where noted, from affidavits submitted by the parties.[1]

Bullock is a Russian national who previously lived or spent significant time in Moscow, but is now a naturalized United States citizen living in New York City. (Bullock Decl. ¶¶ 9, 11 (Docket No. 32); Rothstein Affirm. Ex. D ¶ 11 (Certified Translation to English of Esin Affidavit)).[2] Bullock's ex-husband, Alexei Kuznetsov, was formerly the Minister of Finance of the Moscow Region. (Bullock Decl. ¶ 11). RIGroup USA is a Delaware limited liability company, which was reactivated in 2009 after having become defunct. (Compl. ¶ 32; Rothstein Affirm. Ex. G). Its sole member is Bullock. (Compl. ¶ 32). Through RIGroup USA and other companies she owns, Bullock "engages in real property development and investment in various locations throughout the world." (*Id.*). Most relevant here, until the events giving rise to this lawsuit, RIGroup USA owned a controlling interest in OOO RIGroup ("RIGroup Russia"), a Russian real estate company. (*Id.* ¶¶ 20-21, 33-34). RIGroup Russia, in turn, had "significant assets, including thousands of hectares of land real property [sic] assets valued at the close of 2007 at over 3 billion Russian Rubles," and "held significant real estate assets and development rights in and around Moscow." (*Id.* ¶¶ 33-34). Bullock was also the "lawful and legitimate owner and shareholder of a number of additional corporate entities (and corporate assets) located in Russia," and RIGroup Russia "held a significant shareholder interest in a valuable subsidiary company." (*Id.*).

Plaintiffs allege that, in 2008 and at all relevant times, Defendants Esin and A.V. Belov were both the "Director General (or Chief Executive Officer) of RIGroup Russia" and therefore

---

[1]  All references to the Complaint are to the Second Amended Complaint (Docket No. 45).

[2]  All citations to the Bullock Declaration refer to the declaration submitted in opposition to Esin's motion to dismiss.

2

owed fiduciary duties to Plaintiffs. (*Id.* ¶¶ 35-36). Plaintiffs further allege that in August 2008, Esin and Belov, with their coconspirators, "fabricated a company-initiated 'buyout' in which Bullock (or the companies she controlled, including RIGroup USA) purportedly agreed to accept shares of an affiliated company Rosweb in exchange for her shares of RIGroup Russia." (*Id.* ¶ 37). As a result of the "buyout," Esin, Belov, and their co-conspirators "wrested control of RIGroup Russia[ ] and looted its assets." (*Id.* ¶ 44). To formalize the takeover, the Complaint alleges, Esin and Belov filed false corporate disclosures with the Russian authorities indicating that a newly formed Cypriot entity, Amytal Holdings Ltd., was the owner of 98% of RIGroup Russia. (*Id.*). Plaintiffs contend that this was an example of "corporate raiding," an activity that has allegedly become prevalent in Russia and that generally involves the falsification of corporate records, the theft of companies and assets, and the use of the criminal justice system to bring false charges against target companies and controlling owners. (Bullock Decl. ¶¶ 2-5); *see also id.* Exs. 12-17 (articles describing the practice of corporate raiding in Russia)).

According to the Complaint, Esin, Belov, and their co-conspirators further "created and falsified a number of purported loans, due and owing to RIGroup Russia, from Ms. Bullock and certain of her additional companies located outside of Russia." (Compl. ¶ 46). Esin, Belov, and their co-conspirators — through their companies, Defendants Trefonisco Management Limited, Conflict.net, and Gorsoan — "purported to buy these fraudulent loans . . . from RIGroup Russia for little or no consideration." (*Id.* ¶ 47). On a number of occasions, Esin then attempted to extort Plaintiff to pay off a portion of the fraudulent loans on threat of enforcement of the loans. (*Id.* ¶¶ 9-12, 49). The Defendants and their coconspirators allegedly also "stole and converted the assets of a number of Plaintiff's other companies, including Rosweb, a venture capital fund established in 2007 and worth hundreds of millions of Euros." (*Id.* ¶ 50). The raiders illegally

3

transferred control of Rosweb to the ORSI Group through false corporate documents, including "powers of attorney," and the ORSI Group then divested Rosweb of its assets. (*Id.* ¶¶ 53-54).

On or about July 29, 2009, Esin, Belov, and their partners caused RIGroup Russia to initiate a civil action in the courts of Cyprus against RIGroup USA and others, seeking to enforce a purported loan agreement between RIGroup Russia and Laziar Holding Ltd., a Cypriot company. (*Id.* ¶ 4). As Laziar Holding is controlled by Bullock, Plaintiffs contend that this lawsuit was in effect an effort to extend Defendants' corporate raiding to Cyprus and to illegally take possession of additional assets owned by Plaintiffs, including three French hotels. (*Id.* ¶ 5). Plaintiffs were ultimately able to get this action dismissed with prejudice. (*Id.* ¶ 7).

By summons with notice, Plaintiffs initiated this action in New York Supreme Court, New York County, on or about March 15, 2012. (Compl. ¶ 13). On or about March 21, 2012, they served Esin, who was visiting New York. (*Id.* ¶ 14). And Plaintiffs filed their original complaint on or about April 17, 2012. (*Id.* ¶ 15). After Esin was served, he "had further contacts with New York in connection with improper attempts and threats to convince Plaintiffs to withdraw their complaints against him" and "threatened" Plaintiffs, via a New York businessman, "that unless Plaintiffs withdrew their claims in this action, [Esin] and his coconspirators would retaliate against Bullock and attempt to ruin her." (*Id.* ¶¶ 16, 18). In particular, Esin wrote an e-mail to the New York businessman stating that Bullock was "continu[ing her] litigation against me. . . . I don't know why she does it. There will be a big scandal that will bring nothing but harm to her." (*Id.* ¶ 17). Shortly thereafter, Bullock "received anonymous death threats via the Internet" and Gorsoan commenced a second action against Plaintiffs in Cyprus supported by false testimony. (*Id.* ¶ 19). That action has now

resulted in an interim freeze of at least some assets controlled by Bullock, RIGroup USA, and other entities allegedly controlled by Bullock. (Dracos Decl. ¶¶ 40, 54, 70-73).

Although Plaintiffs fail to mention it in their Complaint, they too have litigated related claims in the Cypriot courts. RIGroup USA, along with other corporate entities controlled by Bullock, filed an action in Cyprus on May 31, 2010, almost two years before the present case commenced, alleging that the assets of RIGroup Russia had been looted and that damages totaled hundreds of millions of dollars. (*Id.* ¶¶ 105-07). Several of the defendants in that action are individuals or entities that Plaintiffs allege profited from the corporate raiding alleged in this action or were otherwise involved in the events giving rise to this case. (*Id.* ¶ 110). Plaintiffs' Cypriot case was dismissed for "want of prosecution" on July 24, 2012. (*Id.* ¶ 115).

## DISCUSSION

"The doctrine of *forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo–Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citations and internal quotation marks omitted). The Court of Appeals for the Second Circuit has established a three-part test for motions to dismiss on *forum non conveniens* grounds:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (citations omitted) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc)). "The defendant bears the burden of establishing that a presently available and adequate alternative

forum exists, and that the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009).

**A.  Step One: Deference to Plaintiffs' Choice of Forum**

First, the Court must determine the degree of deference to be accorded Plaintiffs' choice of forum in this case.  As a general matter, there is "'a strong presumption in favor of the plaintiff's choice of forum,'" *Norex*, 416 F.3d at 154 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)), and that choice will not be disturbed "unless the balance is strongly in favor of the defendant," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The Second Circuit has recognized, however, that "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." *Iragorri*, 274 F.3d at 71.  On one end of that scale, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Id.* at 72 (footnote omitted).  On the other end of the scale, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands." *Id.*

Significantly, the Court of Appeals has long made clear that there "is no 'rigid rule of decision protecting U.S. citizen or resident plaintiffs from dismissal for *forum non conveniens.*'" *Id.* at 74 (quoting *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 102 (2d Cir. 2000)); *see also, e.g., Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 154 (2d Cir. 1980) (en banc) (stating that American citizenship or residence should not be given "talismanic significance"). For example, courts have held that the deference to an American citizen or resident plaintiff's

choice of forum is significantly diminished where the lawsuit arises from business that the plaintiff conducted abroad.  *See, e.g.*, *Carey*, 370 F.3d at 238-39; *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, No. 11-CV-5801 (DLI) (VVP), 2012 WL 3746220, at *3-4 (E.D.N.Y. Aug. 27, 2012); *LaSala v. Lloyds TSB Bank, PLC*, 514 F. Supp. 2d 447, 456-57 (S.D.N.Y. 2007) (citing cases).  As such a plaintiff "sought out the relationship that resulted in the suit," these courts have reasoned, it should have "expect[ed] that disputes over the terms of the transactions or their performance would be resolved" in the foreign forum.  *Carey*, 370 F.3d at 238; *see also Guidi v. Inter-Cont'l Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) (explaining that "a corporation doing business abroad" should "expect to litigate in foreign courts").

Applying these standards here, the Court concludes that little deference should be given to Plaintiffs' choice of forum.  First, neither RIGroup USA nor Bullock warrants the degree of deference generally accorded an American plaintiff's choice of home forum.  With respect to RIGroup USA, Esin presented evidence that the company was legally defunct during the events in question, that it was reactivated only after the alleged corporate raiding in Russia, and that it is nothing more than a holding company for Bullock's international business ventures.  (Rothstein Affirm. ¶¶ 4-8; *id.* Exs. F, G).  In the face of this evidence, and clear precedent for the proposition that shell companies are not entitled to the full measure of "home forum" deference, *see Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 695-96 (S.D.N.Y. 2003), *aff'd*, 98 F. App'x 47 (2d Cir. 2004) (summary order).  Plaintiffs failed to address the issue at all, and certainly did not contest the characterization of RIGroup USA as a shell corporation, provide any details about its business operations to suggest that is anything other than a holding company for Bullock's international business ventures, or offer any explanation for its defunct status. Thus, to the extent that RIGroup USA existed as a legal entity at all during the events in

question, its United States status provides no "bona fide reason for the plaintiffs to have sued in this Court," and its choice of this forum "deserves little deference." *Id.* at 696.

Bullock's status as an American citizen, meanwhile, warrants limited, or perhaps even no deference, as the Complaint alleges injuries only to RIGroup USA. Bullock's injuries arise only because she is a member or shareholder of the affected companies, and it is well established that shareholders and members of limited liability companies — even sole shareholders and sole members — do not have standing to sue for wrongs to the corporate entity. *See, e.g.*, *Jones v. Niagara Frontier Transp. Auth. (NFTA)*, 836 F.2d 731, 736 (2d Cir. 1987); *Houraney v. Burton & Associates, P.C.*, No. 08 CV 2688 (CBA) (LB), 2010 WL 3926907, at *6 & n.9 (E.D.N.Y. Sept. 7, 2010) (applying this rule to limited liability companies), *report and recommendation adopted*, 2011 WL 710269 (E.D.N.Y. Feb. 22, 2011); *see also Doré v. Wormley*, 690 F. Supp. 2d 176, 185-86 (S.D.N.Y. 2010) (applying *Jones* and rejecting individual standing on behalf of an entity). Although Defendants have not moved to dismiss Bullock for lack of standing (and the Court need not address the issue at this time, *see, e.g.*, *Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) (noting that a district court "may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant")), the absence of any allegation of injury to Bullock distinct from RIGroup USA's injuries minimizes, if not eliminates, the deference her choice of forum should be afforded.

Second, Plaintiffs' business activities present a textbook case for application of the principle that "where an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished." *Rabbi*

*Jacob Joseph Sch.*, 2012 WL 3746220, at *3 (brackets and internal quotation marks omitted). RIGroup Russia's business was entirely in Russia. (Compl. ¶¶ 33-34). And RIGroup USA's status as a holding company aside, there is no evidence that Plaintiffs engaged in business activities — let alone the business activities giving rise to this lawsuit — in the United States. (*See, e.g.*, Bullock Decl. ¶ 10 (stating that, through her companies, she is "engaged [in] the business of real property development and investment in various locations throughout the world" and that, "[i]n the United States, I continue to be the owner and sole member of Plaintiff [RIGroup USA], a Delaware limited liability company and real property development company with holdings worldwide"). Put simply, the transactions and agreements "at issue in this case demonstrate that the plaintiffs should not have expected that any of their disputes would be litigated in the United States." *Base Metal Trading*, 253 F. Supp. 2d at 696-97.

Finally, although Plaintiffs proffer reasons for their choice to file suit here that would, if true, qualify as "legitimate," *Iragorri*, 274 F.3d at 73— for example, that they face fabricated criminal charges, death threats, and corruption in Russia (Bullock Decl. ¶¶ 4-5) — there is substantial and uncontroverted evidence that Plaintiffs have engaged in forum shopping. Specifically, as noted above, Plaintiffs first brought claims related to the looting of RIGroup Russia's assets in Cyprus before abandoning that case. (*See* Gorsoan Mem. Law 18-19; Dracos Decl. ¶¶ 105-15). The Cyprus case was apparently filed almost two years before the present litigation commenced, but notably was still pending at the time Plaintiffs filed the present litigation. Despite being confronted with these specific arguments and allegations in Gorsoan and Sirotkin's motion papers, Plaintiffs again fail to even mention, let alone vigorously contest, this point in their reply papers. Taken together with the considerations discussed above, it weighs heavily against affording any deference to Plaintiffs' chosen forum.

**B. Step Two: The Availability of an Adequate Alternative Forum**

The Court turns, then, to whether Defendants have proposed an adequate alternative forum to adjudicate the parties' dispute. Generally, "[a]n alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (citing *Piper*, 454 U.S. at 254 n. 22). A forum that satisfies that test is nonetheless inadequate if it is "is characterized by a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *In re Arbitration Between Monegasque De Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 499 (2d Cir. 2002). Findings of inadequacy on that basis, however, are "rare" because "considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards." *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998); *see also, e.g.*, *Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) ("[W]e have repeatedly emphasized that it is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." (internal quotation marks and brackets omitted)). Moreover, it is the plaintiff who "bears the initial burden of producing evidence of corruption, delay or lack of due process in the foreign forum," although "the defendant bears the ultimate burden of persuasion as to the adequacy of the forum." *Abdullahi*, 562 F.3d at 189 (citing *Norex,* 416 F.3d at 159-60). "[C]onclusory submissions," "bare denunciations," and "sweeping generalizations" about the alternative forum's legal system do not satisfy the plaintiff's burden on this issue. *Monegasque*, 311 F.3d at 499 (internal quotation mark omitted).

In this case, Esin, Sirotkin, and Gorsoan have met their burden of demonstrating that "defendants are amenable to service of process" in Russia and that Russia "permits litigation of the subject matter of the dispute." *Pollux Holding Ltd.*, 329 F.3d at 75.[3] Esin has submitted an affidavit from Mikhail Rozenberg, the senior partner in the Moscow office of Chadbourne & Parke LLP, who affirms, on the basis of thirty years' experience practicing law in Russia, that the Russian courts present an available and adequate alternative forum. (Rozenberg Aff. ¶¶ 1, 12). Rozenberg has concluded that, in light of the citizenship of many of the individual and corporate defendants in this case, the close factual connection between the case and Russia, and the economic nature of the dispute, the Russian commercial courts (known as "arbitrazh" courts) would exercise jurisdiction over Defendants and this case. (*Id.* ¶¶ 3 n.2, 16-29). Rozenberg has also reviewed the relevant Russian law and concluded that Plaintiffs' claims for damages and the invalidation of the allegedly fraudulent loans are cognizable under Russian law. (*Id.* ¶¶ 30-56). This evidence — unrebutted by Plaintiffs — is plainly sufficient to meet Defendants' burden to show that Russia is a legally adequate alternative forum.

In opposing Russia as an alternative forum, Plaintiffs do not dispute that Defendants are amenable to service of process there and that Russia permits litigation of the subject matter of this dispute. Instead, they contend that they are unable to obtain a fair trial in Russia because of an allegedly baseless criminal investigation targeting Bullock; various threats against Bullock; and corruption in the Russian judiciary, which allows and supports widespread corporate raiding activities like those alleged in this case. (*See* Pls.' Opp'n to Esin 6-8). The pending investigation of Bullock, however, is not a basis for retaining jurisdiction over this lawsuit, as

---

[3]    Gorsoan and Sirotkin propose either Cyprus or Russia as an alternative forum in this case. (*See* Gorsoan Mem. Law 20-23). As the Court finds that Russia is an adequate alternative forum, the Court need not address whether Cyprus is as well.

11

Plaintiffs have neither shown that the investigation is baseless nor that the Russian criminal justice system is inadequate to allow Bullock to vindicate her purported innocence. *See, e.g.*, *Base Metal Trading*, 253 F. Supp. 2d at 711 (rejecting a similar argument and holding that the plaintiff's "refusal to return to Russia to defend against [pending criminal] charges provides no ground for keeping the action here"). And Plaintiffs' allegations about threats against Bullock, although troubling, are largely conclusory and unsupported by any evidence. For example, Plaintiffs allege that Bullock received anonymous death threats via the Internet and was warned not to pursue this litigation in Russia, but provide no details or evidence of these threats. (*See* Compl. ¶¶ 18-19; Pls.' Opp'n to Esin 7; Bullock Decl. ¶¶ 5, 22). Moreover, the few e-mails Plaintiffs have submitted do not actually amount to threats. Bullock herself characterizes one e-mail as nothing more than a warning that Esin will mount a "mudslinging 'scandal that will bring nothing but harm to [Bullock].'" (Bullock Decl. ¶ 7 (quoting *id.* Ex. 5)).[4]

That leaves Plaintiffs' assertions of corruption in the Russia. There is, to put it mildly, "substantial temerity to the claim that the forum where a party has chosen to transact business . . . is inadequate." *Base Metal Trading*, 253 F. Supp. 2d at 707 (internal quotation mark omitted). Regardless, Plaintiffs have not cited a single case finding Russia to be an inadequate forum on these grounds, nor has the Court found one itself. By contrast, district courts in this Circuit have repeatedly rejected arguments that Russia is an inadequate forum based on allegations of the sort made by Plaintiffs here. *See, e.g.*, *Esheva v. Siberia Airlines*, 499 F. Supp. 2d 493, 499-500 (S.D.N.Y. 2007) (holding that Russia was an adequate forum despite

---

[4] The closest Plaintiffs come to providing evidence of any wrongdoing is an affidavit from Dmitry Demidov indicating that he was withdrawing certain testimony because "the text of [his] testimony had been provided to [him] under the threat of physical coercion: [He] had to read it and sign in the presence of the lawyer, offered by the investigators." (Bullock Decl. Ex. 4). But Plaintiffs fail to provide any further details with respect to Demidov's testimony and the role, if any, that he played in the investigation of Bullock.

expert testimony on pervasive corruption and citing cases); *Overseas Media, Inc. v. Skvortsov*, 441 F. Supp. 2d 610, 617-18 (S.D.N.Y. 2006) (collecting cases), *aff'd*, 277 F. App'x 92 (2d Cir. 2008) (summary order); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 304 F. Supp. 2d 570, 580 (S.D.N.Y. 2004) (holding that Russia was an adequate forum despite allegations of corporate raiding and corruption), *vacated and remanded on other grounds*; *Films by Jove, Inc. v. Berov*, 250 F. Supp. 2d 156, 207 n.47 (E.D.N.Y. 2003) (citing cases); *Base Metal Trading*, 253 F. Supp. 2d at 709 (holding that Russia was an adequate forum despite allegations of corporate raiding, unjustified prosecution, threats, and corruption); *see also Base Metal Trading*, 253 F. Supp. 2d at 706 ("'The "alternative forum is too corrupt to be adequate" argument does not enjoy a particularly impressive track record.'" (quoting *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997))).  In fact, if anything, the showing by Plaintiffs here is weaker than the showing made in many of these cases, as Plaintiffs have not proffered evidence, by expert testimony or otherwise, of the alleged corruption.  It follows that Plaintiffs' challenge to the adequacy of Russia as an alternative forum fails.

## C.  Step Three: The Balance of Public and Private Factors

That brings the Court to step three of the analysis: whether "the balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi*, 562 F.3d at 189. In this case, the relevant private interest factors, which concern the convenience of the litigants, are (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See Iragorri*, 274 F.3d at 73-74 (quoting *Gilbert,* 330 U.S. at 508).  The first three factors are especially significant.  Indeed, courts have regularly concluded that "[w]here most of the

witnesses and documentary evidence reside in a foreign country, conducting trial in the U.S. could impose such significant burdens on the parties that dismissal is favored." *Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 766 (S.D.N.Y. 2006) (citing *Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 611 (2d Cir. 1998)); *see also Niv v. Hilton Hotels Corp.*, 710 F. Supp. 2d 328, 341 (S.D.N.Y. 2008) (following *Strategic Value*), *aff'd*, 358 F. App'x 282 (2d Cir. 2009) (summary order); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 488 (S.D.N.Y. 2006) (same), *aff'd*, 233 F. App'x 83 (2d Cir. 2007) (summary order).

In this case, the private interest factors weigh heavily in favor of dismissal. First, virtually all of the relevant documentary evidence is in Russia. (Rozenberg Aff. ¶¶ 71-74; Gorsoan Mem. 22). Even more important, much of that evidence appears to be in the hands of third parties — such as the Russian Register and Russian bankruptcy court — and thus beyond the power of this Court to compel. (Rozenberg Aff. ¶¶ 71-72, 74, 80-85). *See also, e.g.*, *Pavlov v. Bank of N.Y. Co., Inc.*, 135 F. Supp. 2d 426, 436 (S.D.N.Y. 2001) (holding that the court had "no ability to compel the production of documents . . . from Russia"), *vacated on other grounds by* 25 F. App'x 70 (2d Cir. 2002) (summary order); *Niv*, 710 F. Supp. 2d at 342 (holding that when the court cannot compel the production of evidence, "this factor weighs in favor of dismissal"), *aff'd*, 358 F. App'x 282 (2d Cir. 2009). And compounding matters, most, if not all, of the relevant documents are in Russian, which supports a finding that Russia is more convenient than this forum for litigation of Plaintiffs' claims. *See, e.g.*, *Overseas Media*, 441 F. Supp. 2d at 618-19; *Base Metal Trading*, 253 F. Supp. 2d at 711-12. Notably, Plaintiffs do not contest any of these assertions or representations. Instead, they contend that this factor does not favor dismissal because "Esin has already sent electronically zip files of many of the pertinent

documents" to a businessman living in New York, and that "most of those documents have already been translated." (Pls.' Opp'n to Esin 8). But "many of the pertinent documents" is a far cry from all of the relevant documents in this case, and presumably does not include documents exclusively in the custody of the Russian Register or Russian bankruptcy courts. Moreover, Plaintiffs conspicuously fail to identify which documents are allegedly available in the United States, let alone which of those have been translated (and by whom). Given that, and Defendants' showing that a large proportion of the relevant documents would be beyond this Court's reach, this factor favors dismissal.

The location of witnesses also favors dismissal. Bullock herself aside, all of the individual parties appear to be Russian citizens residing in Russia. (Compl. ¶¶ 22-23; Rothstein Affirm. Ex. D ¶¶ 1, 3; Sirotkin Decl. ¶ 2). And although the parties have not identified with specificity the non-party witnesses, it stands to reason that — in a case relating to conduct that took place almost entirely in Russia, involving a Russian company that invested in Russian real estate, and alleged fraud perpetrated on the Russian courts — most, if not all, of the witnesses are in Russia and speak Russian. (*See* Rothstein Affirm. Ex. D ¶ 15 (noting that, aside from Bullock and possibly one former RIGroup Russia employee, "all people with knowledge of issues concerning the management and control of [RIGroup Russia] are citizens of Russia, reside in Russia, and either do not speak English or do not speak it fluently"); Compl. ¶ 1 (alleging that Defendants Esin and Belov were working for and supported by "a gang of Russian corporate raiders").[5] In any event, to the extent that there are *any* relevant non-party witnesses located in

---

[5] Plaintiffs assert that it is Defendants' burden to "make a full and candid showing, naming the potential witnesses for the defense, specifying their location, specifying what their testimony may be and how crucial it is for the defense, and setting forth how exactly they may be inconvenienced by having to testify in the court chosen by the plaintiffs." (Pls.' Opp'n to Esin 9; Pls.' Opp'n to Gorsoan Defs. 20). Significantly, Plaintiffs cite no legal support for this assertion,

Russia — as there plainly are — this Court would lack authority to compel their testimony. *See, e.g.*, *Norex*, 304 F. Supp. 2d at 582 (finding that allegations of Russian corporate raiding, similar to those alleged here, "point to persons located in Russia whom this Court could not reach with compulsory process"); *Base Metal Trading*, 253 F. Supp. 2d at 710 (noting that "the Court cannot compel [non-party] witnesses [located in Russia to] appear"); *Pavlov*, 135 F. Supp. 2d at 436 (same). Conversely, Plaintiffs have identified only one potential non-party witness in the United States who might be beyond the reach of the Russian courts — the businessman with whom Esin corresponded (Pls.' Opp'n to Esin 8-9) — but he appears to be a defense witness, and a marginal one at that, so his presence here does not weigh heavily against dismissal.

Third, the private interest factors favor a Russian forum because a judgment from this Court may not be enforceable in Russia. (Esin Mem. 14-15; Rozenberg Aff. ¶¶ 88-92). Esin maintains that the Complaint in this case raises four categories of issues that, under Russian law, are subject to the exclusive jurisdiction of the Russian commercial courts: (1) "disputes involving foreign parties and Russian real property"; (2) "disputes involving foreign parties and claims to invalidate entries in registers maintained by state agencies"; (3) "disputes involving foreign parties and challenges to decisions of governing bodies of Russian legal entities"; and (4)

---

which a Google search reveals to have been reprinted, almost word-for-word, from the Wikipedia entry for "forum non conveniens." *See Forum Non Conveniens*, Wikipedia.com, http://en.wikipedia.org/wiki/Forum_non_conveniens (last visited June 6, 2013). Suffice it to say, Wikipedia — even if Plaintiffs' counsel had properly cited it — is not valid legal authority. And in this instance, it also happens to be wrong, as courts evaluating *forum non conveniens* motions (as opposed to motions to transfer venue pursuant to Title 28, United States Code, Section 1404, *see, e.g.*, *Taberna Capital Mgmt., LLC v. Dunmore*, No. 08 Civ. 1817 (JSR), 2008 WL 2139135, at *3 (S.D.N.Y. May 20, 2008)), regularly rely upon the pleadings, affidavits, and their own assessment of the facts and legal questions at issue to determine the location, or likely location, of relevant witnesses. *See, e.g.*, *Palacios v. Coca-Cola Co.*, 757 F. Supp. 2d 347, 361 & n.11 (S.D.N.Y. 2010), *aff'd*, 499 F. App'x 54 (2d Cir. 2012) (summary order); *Norex*, 304 F. Supp. 2d at 583; *Varnelo v. Eastwind Transp., Ltd.*, No. 02 Civ. 2084 (KMW) (AJP), 2003 WL 230741, at *23-24 (S.D.N.Y. Feb. 3, 2003), *adhered to*, 2004 WL 103428 (S.D.N.Y. Jan. 23, 2004).

"disputes related to the liquidation of Russian legal entities." (Esin Mem. 15; Rozenberg Aff. ¶¶ 57-68). According to Esin's expert, foreign judgments falling in these categories are not enforceable in Russia. (Rosenberg Aff. ¶ 58). Plaintiffs do not dispute the point, except to assert that Defendants may have assets outside of Russia and that a judgment "could serve to offset other claims by the defendants against RIGroup and Bullock." (Pls.' Opp'n to Esin 10). Plaintiffs, however, identify only one such asset — an apartment in New York owned by Defendant Belov (*see* Bullock Decl. Ex. 6) — and that is plainly insufficient to satisfy the sort of judgment Plaintiffs seek here. At a minimum, it is undisputed that Plaintiffs "would have less difficulty enforcing a [Russian] judgment in [Russia]," which favors dismissal. *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, No. 5:01-CV-0882 (NAM) (GJD), 2007 WL 2891981, at *13 (N.D.N.Y. Sept. 28, 2007).

Finally, the relevant public interest factors also favor dismissal. These factors include (1) the administrative burden on the congested court being asked to handle a dispute arising from another forum; (2) the burden of jury duty on the "people of a community which has no relation to the litigation"; (3) the "local interest in having localized controversies decided at home"; and (4) the burden of applying foreign law. *Iragorri*, 274 F.3d at 74 (quoting *Gilbert*, 330 U.S. at 508-09). Here, only the first factor is neutral, as the congestion of this Court's docket is of "little or no present significance." *Guidi*, 224 F.3d at 146 n.5. Given that the dispute in this case concerns alleged misconduct in Russia, involving a Russian business engaged in real estate investment and development in Russia, there is little question that the "local interest" factor strongly favors a Russian forum. For the same reasons, the burden on the jury pool in this district also weighs in favor of dismissal, as this "community . . . has no relation to the litigation" other than Bullock's residence. *Iragorri*, 274 F.3d at 74; *Norex*, 304 F. Supp. 2d at

17

581 (finding that this factor favored dismissal where, as here, the dispute was over alleged corporate raiding of a Russian company, in Russia, by Russian defendants).  Finally, the foreign law factor also weighs in favor of a Russian forum.  This Court is certainly competent to apply foreign law, but a Russian court would indisputably be more familiar with, and competent to apply, Russian commercial, real estate, and bankruptcy law.  *See Base Metal Trading*, 253 F. Supp. 2d at 712 (finding that notwithstanding the Court's competence to apply foreign law, this factor still favored dismissal where extensive application of foreign law was required).

## CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss on the grounds of *forum non conveniens* are granted and the Complaint is dismissed.[6]  The Clerk of the Court is directed to terminate all pending motions and close the case.

SO ORDERED.

Dated: June 7, 2013
New York, New York

JESSE M. FURMAN
United States District Judge

---

[6] Although Gorsoan Limited and Sirotkin raise other arguments for dismissal (Gorsoan Mem. 6-16, 23-35), the Court need not, and does not, reach them in light of its ruling.  *See Sinochem Int'l Co.*, 549 U.S. at 432 ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant."); *see also Online Payment Solutions Inc. v. Svenska Handelsbanken AB*, 638 F. Supp. 2d 375 (S.D.N.Y. 2009) (bypassing Rule 9(b) issues to dismiss on *forum non conveniens* grounds).